UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
ROBERT E. LEE, *et al.*,             )
                             Plaintiffs,  )  No. C11-2021RSL
        v.                       )
                                )  ORDER GRANTING IN PART
MOHAMMAD F. A. ABDEL-HAQ, *et al.*,  )  DEFENDANTS' MOTION TO
                                )  DISMISS
                       Defendants. )
_____)

        This matter comes before the Court on "Defendants' Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2)." Dkt. # 59. Plaintiffs Robert E. Lee, a Washington resident, and R.E. Lee International, LLC, a Washington limited liability company, allege that defendants fraudulently induced plaintiffs to enter into multiple business arrangements with Mr. Abdel-Haq and his companies, breached fiduciary duties, and converted funds that were meant to be used for the benefit of their business ventures. Plaintiffs also allege that Mr. Abdel-Haq and one of his companies, Fortune Nest Corporation ("FNC"), violated state and federal securities laws by offering and selling shares of FNC to Mr. Lee. Finally, plaintiffs allege that Mr. Abdel-Haq breached a series of oral loan agreements by failing to repay $550,000 in personal loans. Defendants assert that this Court does not have personal jurisdiction over them and seek dismissal of plaintiffs' claims.

        Plaintiffs have the burden of showing that the Court has jurisdiction over each

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS

defendant.[1] Where personal jurisdiction is considered without the benefit of an evidentiary hearing, plaintiffs need make only a prima facie showing of jurisdictional facts in order to withstand a motion to dismiss. Washington Shoe Co. v. A-Z Sporting Goods, Inc., __ F.3d __, 2012 WL 6582345 at *2 (9th Cir. Dec. 17, 2012). The Court takes the uncontroverted allegations of plaintiffs' complaint as true and resolves conflicts in the affidavits in plaintiffs' favor. Fiore v. Walden, 688 F.3d 558, 574 (9th Cir. 2012); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). In evaluating whether plaintiffs have made a prima facie showing of personal jurisdiction, plaintiffs get the benefit of all reasonable inferences, and the credibility of their witnesses is assumed. Fiore, 688 F.3d at 575.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

In order for the Court to exercise jurisdiction over a non-resident under Washington law and the federal Due Process Clause, plaintiffs must show that each defendant had "certain minimum contacts with [Washington] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). In the Ninth Circuit, a three-part test is used to determine whether the circumstances giving rise to the litigation provide sufficient forum-related contacts to justify the exercise of personal jurisdiction:

> (1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some

---

[1] Except where specifically authorized by statute, the Ninth Circuit has not approved the exercise of personal jurisdiction over a person or entity whose only alleged contact with the forum was as a participant in a conspiracy with others who may have the requisite minimum contacts. Ukrvaktsina v. Olden Group, LLC, 2011 WL 5244697 at *8-9 (D. Or. Oct. 30, 2011).

[2] Defendants' request for oral argument in their reply memorandum is untimely (see LCR 7(b)(4)). In addition, the Court finds that this matter can be decided on the papers submitted.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS           -2-

> act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

Schwarzenegger, 374 F.3d at 802. The first requirement of the Schwarzenegger test is intended to ensure that a party has sufficient contacts with the forum state to warrant his being haled into court there: "random, fortuitous, or attenuated contacts" are not enough to satisfy the constitutional requirements. Ziegler, 64 F.3d at 473 (internal quotation marks omitted). The two prongs of the first requirement reflect the different analyses applied to contract and tort claims: the purposeful availment prong is most often applied in contract claims, while the purposeful direction analysis generally governs tort claims. Fiore, 688 F.3d at 576. Because plaintiffs have alleged claims that sound in both contract and tort,[3] defendants' jurisdictional contacts are considered in light of both types of claims.

**A. Contract Claims**

A party purposefully avails himself of the benefits of the forum if he has deliberately "engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum." Burger King, 471 U.S. at 475-76 (citations omitted). The mere existence of a contract with a resident of the forum is insufficient to justify the exercise of jurisdiction over a foreign defendant: the relationship between the forum and the course of negotiations, the terms of the contract, and its anticipated future consequences must be considered. Burger King, 471 U.S. at 479.

Mr. Abdel-Haq argues that he cannot be forced to defend Mr. Lee's contract claim

---

[3] The Court declines defendants' invitation to ignore the actual allegations and claims asserted in the complaint and instead treat the entire case as if it were a contract action. Reply (Dkt. # 80) at 6.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS           -3-

in Washington because "the transactions and agreements were all international in nature, with no connections to Washington other than Lee's residence." Reply (Dkt. # 80) at 6. The record does not support these assertions. Mr. Lee's contract claims are based on a series of personal loans made by Mr. Lee at Mr. Abdel-Haq's request between March 17, 2011, and November 9, 2011. According to the allegations of the complaint, Mr. Abdel-Haq borrowed money from a known Washington resident, promised to repay him, and failed to do so on demand. Mr. Lee, whose credibility is assumed, states that Mr. Abdel-Haq called Mr. Lee in Seattle to negotiate these loans, that the funds were transferred from a Seattle bank account to Mr. Abdel-Haq in California to help Mr. Abdel-Haq pay medical and personal expenses while visiting the United States, and that Mr. Abdel-Haq has rebuffed requests for repayment. Washington State is closely linked with these events. To the extent the alleged contracts created future obligations between the parties, they consisted of a duty to repay that was to occur in Washington for the benefit of a Washington resident and his bank accounts. Because Mr. Abdel-Haq voluntarily entered into a debtor-creditor relationship through a series of contracts, the only purpose of which was to obtain a disbursement of $550,000 from a Washington resident and to require Mr. Abdel-Haq to repay those funds, he has the minimum contacts necessary for this Court to exercise specific jurisdiction over him with regards to Mr. Lee's breach of contract claim.

**B. Tort Claims**

The Ninth Circuit has recently evaluated what it means to purposely direct conduct at a forum state. In Fiore v. Walden, 688 F.3d 558, 576 (9th Cir. 2012), the Ninth Circuit reiterated that the three-part Calder effects test applies and that purposeful direction exists if (a) the defendant committed an intentional act, (b) expressly aimed at the forum state, and (c) causing harm that the defendant knows is likely to be suffered in the forum state. The "intentional act" need not occur in the forum: as long as defendant has "an intent to perform an actual, physical act in the real world," this element is satisfied. Schwarzenegger, 374 F.3d at 806. An intent to accomplish a particular result or consequence within the forum need not be

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS            -4-

shown. After acknowledging that the "express aiming" prong of the Calder effects test "presents a more difficult question," the Ninth Circuit concluded that "if a defendant is alleged to have defrauded or similarly schemed against someone with substantial ties to a forum, the 'expressly aimed' factor is met, even if all the defrauding activities occur outside the forum." Fiore, 688 F.3d at 580. Finally, the "foreseeable harm" element simply requires that defendant's intentional act have some foreseeable effect in the forum, even if harm is also suffered in other jurisdictions. Fiore, 688 F.3d at 581 (quoting Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010)).

Unlike the case pending before this Court, the facts in Fiore are simply stated. A DEA agent at the Atlanta airport seized cash from two travelers whom he suspected of illegal drug activity. The travelers were subsequently able to obtain receipts and other documentation showing that the funds were legally obtained. Rather than request the release of the funds, however, Agent Walden signed an affidavit of probable cause which, plaintiffs alleged, was knowingly false and resulted in the continued detention of their money. At the time he signed the affidavit, the DEA agent knew that plaintiffs had traveled to Las Vegas, Nevada, and that they were gamblers with some financial connection to that state (their licenses, however, were from California). It is also possible that Agent Walden was aware that the receipts and documents establishing plaintiffs' right to the cash had been mailed from Las Vegas (although there is no indication that the package was sent directly to him or that he would have seen the return address).

The Ninth Circuit found that all three prongs of the Calder effects test were satisfied. The signing of a false affidavit was an "intentional act," with the delay in returning the funds to Nevada a foreseeable harm. The "express aiming" prong was deemed satisfied because Agent Walden's act targeted plaintiffs knowing "of their significant connection to Nevada and of the likely impact of his defrauding actions on their property and business in Nevada." Fiore, 688 F.3d at 581. Plaintiffs, not surprisingly, rely heavily on Fiore and its analysis in their opposition

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS            -5-

memorandum. Dkt. # 71 at 9-10.  Defendants, apparently recognizing that plaintiffs' allegations of fraud and scheming against forum residents may be sufficient under Fiore, argue that the Court should adopt the reasoning of the Fiore dissents.  Although the undersigned believes the Fiore dissents are correct, the Court is not free to ignore the clear trend in the Ninth Circuit of exercising jurisdiction based on allegations of intentionally tortious conduct aimed at a known resident of the forum.  See Washington Shoe, __ F.3d __, 2012 WL 6582345 (9th Cir. Dec. 17, 2012); Fiore, 688 F.3d 558 (9th Cir. 2012); Brayton Purcell, 606 F.3d 1124 (9th Cir. 2010).  It is with that theory of personal jurisdiction in mind that the Court must evaluate each defendants' contacts with the forum.

### 1. Mohammed Abdel-Haq

Plaintiffs have asserted fraud and conversion claims against Mr. Abdel-Haq, a citizen of Jordan and a resident of China and Bahrain.  Based on the allegations of the complaint, one could reasonably infer that Mr. Abdel-Haq intentionally misrepresented the viability and capabilities of his company, FNC, that he concocted the joint venture and the sale of FNC stock as a means of obtaining millions of dollars from plaintiffs, and that he improperly converted some or all of the money to unauthorized uses for his or his family's benefit.  These acts were intentional and had as their foreseeable result financial harm in this district.  Pursuant to the Fiore analysis, defrauding or scheming against a Washington resident and his corporation constitutes conduct expressly aimed at the forum even if all of the misrepresentations and other defrauding activities occurred outside the state.  Thus, Mr. Abdel-Haq has purposely directed his activities at a resident of this state, satisfying the first prong of the specific jurisdiction analysis. The Court also finds that plaintiffs' fraud and conversion claims arise out of Mr. Abdel-Haq's targeting of plaintiffs (*i.e.*, his forum-related activities) and that the exercise of jurisdiction in

these circumstances comports with our traditional notions of fair play and substantial justice.[4]

### 2. Fortune Nest Corporation ("FNC")

Based on the allegations of the complaint, one could reasonably infer that FNC and Mr. Abdel-Haq share a unity of interests, such that Mr. Abdel-Haq was acting either as the corporation's agent or was utilizing the corporation as the tool through which plaintiffs were defrauded. Plaintiffs allege that Mr. Abdel-Haq is the chairman, chief executive officer, and sole director of FNC, a Cayman Islands corporation. The alleged scheme involved misrepresentations regarding FNC's viability and capabilities and other activities designed to encourage plaintiffs to invest in the joint venture (half of which was owned by FNC) and in FNC itself. In the circumstances presented here, the Court finds that Mr. Abdel-Haq's forum-related activities were, in fact, attributable to FNC, and both are subject to the personal jurisdiction of this Court.

### 3. Fortune Nest Corporation (Nevada)

Plaintiffs allege that Mr. Abdel-Haq and all of the corporate entities identified in the complaint are alter egos of each other. First Amended Complaint (Dkt. # 40) at ¶15. Such a bare and conclusory allegation is not enough to establish personal jurisdiction, however. Corporate entities are presumed to be separate, and the jurisdictional contacts of one sister or parent company will not be attributed to a related company absent some showing that they are not really separate entities. Doe v. Unocal Corp., 248 F.3d 915, 925-26 (9th Cir. 2001).

In May 2008, a company called Fortune Nest Corporation was incorporated in Nevada with Mr. Abdel-Haq as president and sole director. When the corporate status of the initial entity was revoked, Mr. Abdel-Haq again incorporated Fortune Nest Corporation in Nevada, retaining the roles of president and sole director. (In order to distinguish this

---

[4] Exercising jurisdiction over Mr. Abdel-Haq in this case is at least as reasonable as the Nevada court's exercise of jurisdiction over Agent Walden in Fiore.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS           -7-

1 corporation from the Cayman Island corporation of the same name, it will hereafter be called
2 "FNC Nevada.")  Plaintiffs allege that the currently-existing version of FNC Nevada is the
3 successor in interest to the former version.

4        Other than allegations regarding the ownership and incorporation of FNC Nevada,
5 the complaint is silent regarding this entity's role in the alleged scheme to defraud plaintiffs of
6 millions of dollars.  In their opposition to defendants' motion to dismiss, plaintiffs argue that the
7 Bank of America account to which plaintiffs sent their initial investments in the joint venture
8 was owned by FNC Nevada.  Opposition (Dkt. # 71) at 16-17.  However, the evidence on which
9 this statement relies supports only a finding that "Fortune Nest Corporation" owned the account
10 and that the account was physically located in California.  Decl. of Bruce Wotherspoon (Dkt.
11 # 74) at ¶ 6; Decl. of Khaled Abu-Keshek (Dkt. # 76) at ¶¶ 4-6.  Plaintiffs have failed to make
12 even a prima facie showing that the owner of the California bank account was FNC Nevada as
13 opposed to FNC or another entity.  Thus, there are simply no allegations or evidence tying FNC
14 Nevada to the alleged fraud or plaintiffs' other intentional tort claims.  The mere fact that Mr.
15 Abdel-Haq is an officer and director of a company, without more, is not sufficient to make a
16 prima facie showing of minimum contacts on the part of this separate corporate entity.[5]

17        **4.  Fortune Nest, Ltd.**

18        Fortune Nest, Ltd. ("FNL") is a British Virgin Islands company formed by Mr.
19 Abdel-Haq to hold shares of FNC.  In March 2009, FNC transferred its 50% ownership interest
20 in the joint venture to FNL.  After that time, funds contributed to the joint venture by plaintiffs
21 were sent to FNL which, according to the allegations of the complaint, intentionally converted

---

[5] If plaintiffs move to amend their complaint to allege that the Bank of America account belonged to FNC Nevada rather than FNC, the allegations would probably be sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2).  Although plaintiffs would still not have identified an intentional act on the part of FNC Nevada related to the initial scheme to defraud, they would be in a position to allege that FNC Nevada intentionally converted the funds it received, with knowledge that the deprivation of the funds would cause harm in Washington.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS      -8-

the funds with knowledge that the injury would be felt in Washington.  Pursuant to the Fiore analysis, an intentional tort defrauding a known Washington resident and his corporation constitutes conduct expressly aimed at the forum even if all of the events giving rise to the claim occurred outside the state.  688 F.3d at 586.  Thus, FNL engaged in an intentional act directed at a resident of this state and causing harm here.  In addition, plaintiffs' conversion claim arises out of these forum-related activities, and the exercise of jurisdiction in these circumstances comports with our traditional notions of fair play and substantial justice.

### 5. Bana M. Abdel-Haq

Ms. Abdel-Haq is Mr. Abdel-Haq's daughter.  Although it is not clear what, if any, official position she holds in her father's businesses, one could reasonably infer from the allegations of the complaint and evidence provided that Ms. Abdel-Haq was not merely a traveling companion for her father, but rather that she engaged in substantive discussions regarding his businesses and interests, either in his presence or with his knowledge.  The mere fact that Ms. Abdel-Haq could potentially be characterized as an employee or agent of Mr. Abdel-Haq and/or FNC, standing alone, does not justify the exercise of personal jurisdiction over her, however.  An employee is not necessarily responsible for the conduct of her employer: her individual contacts with the forum must be evaluated.

According to the complaint, Ms. Abdel-Haq was listed as the secretary of the first version of FNC Nevada, she attended a meeting between Mr. Lee and Mr. Abdel-Haq in June 2008 in California at which the joint venture was discussed, she spent a week in August 2008 meeting with Mr. Lee's staff in Seattle and reviewing marketing and business materials related to the joint venture, and she received disbursements of $120,000 from the funds purportedly held for the benefit of the joint venture.  At most, the allegations suggest that Ms. Abdel-Haq was part of the window-dressing her father offered to make it appear that FNC was a viable entity capable of partnering with plaintiffs to achieve the purposes of the joint venture.  No facts are alleged or

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS           -9-

evidence presented, however, which could reasonably lead to the conclusion that Ms. Abdel-Haq was a knowing participant in the alleged scheme to defraud plaintiffs or that she had reason to know that the money she received from her father's businesses had been converted from its intended use.  Plaintiffs do not allege that Ms. Abdel-Haq knew the statements attributed to other persons were false and simply rely on the fact that Ms. Abdel-Haq is Mr. Abdel-Haq's daughter and possible employee to raise such an inference.  In the circumstances presented here, however, the inference is not reasonable:  the jurisdictional contacts of an employer are not automatically attributed to an employee, nor are the contacts of a parent imposed on a child.  The intentional acts of which Ms. Abdel-Haq is accused – serving as an officer of a Nevada corporation, attending meetings and discussing marketing plans, and accepting corporate funds – were either not aimed at a Washington resident and/or did not give rise to plaintiffs' claims.

### C. Pendent Personal Jurisdiction

In the Ninth Circuit, "a court may assert . . . jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."  Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004).  Although plaintiffs have alleged three separate means by which defendants encouraged the transfer of money from plaintiffs to defendants (the joint venture, the investment in FNC, and the personal loans), the overarching narrative presented in the complaint is of a prolonged effort to convince plaintiffs to turn over funds, convert the funds to unauthorized uses, and refuse to provide value or an accounting upon demand.  The history of the parties' relationship and the sequential communications in which it was built provide the common nucleus of operative facts that led from one investment to another to another, resulting in all of the various claims asserted in this litigation.  To the extent plaintiffs have alleged non-

intentional torts and statutory claims for relief,[6] the Court will exercise pendent personal jurisdiction.

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED in part. The Court does not have personal jurisdiction over FNC Nevada or Bana M. Abdel-Haq. The claims against those defendants are DISMISSED pursuant to Fed. R. Civ. P. 12(b)(2).

Dated this 14th day of February, 2013.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[6] The Court will not evaluate defendants' Rule 12(b)(1) motion, raised for the first time in reply.